UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL A. DUNCAN,

        Petitioner,

                                                                        Case No. 14-cv-13863

v.

                                                                         HON. MARK A. GOLDSMITH

CATHERINE S. BAUMAN,[1]

        Respondent.

_____/

**OPINION AND ORDER
(1) DENYING THE PETITION FOR WRIT OF HABEAS CORPUS (Dkt. 1); (2) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY; AND (3) GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS**

**I. INTRODUCTION**

Petitioner Michael A. Duncan, presently confined at the Alger Correctional Facility in Munising, Michigan, filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. 1). Petitioner challenges his plea conviction for second-degree home invasion, Mich. Comp. Laws § 750.110a(2); domestic violence, third offense, Mich. Comp. Laws § 750.81(4); and being a third habitual offender, Mich. Comp. Laws § 769.11. For the reasons stated below, the Court denies petition for writ of habeas corpus.

**II. BACKGROUND**

Petitioner was originally charged with first-degree home invasion and domestic violence, third offense. The prosecutor initially filed a notice of intent to seek a sentence enhancement,

---

[1] Petitioner has been transferred to the Alger Correctional Facility, see 12/15/2014 Notice (Dkt. 7), where Catherine S. Bauman is the warden. The only proper respondent in a habeas case is the habeas petitioner's custodian, which, in the case of an incarcerated habeas petitioner, is the warden of the facility where the petitioner is incarcerated. See Edwards v. Johns, 450 F. Supp. 2d 755, 757 (E.D. Mich. 2006); see also Rules Governing § 2254 Cases, Rule 2(a), 28 U.S.C. foll. § 2254. Therefore, the Court substitutes Warden Catherine S. Bauman in the caption.

1

charging Petitioner with being a fourth felony habitual offender. The notice indicated that Petitioner faced up to life in prison on the original first-degree home invasion charge, and 15 years in prison on the domestic violence charge, if convicted as a fourth habitual offender.

On January 17, 2012, Petitioner pleaded no contest to a reduced charge of second-degree home invasion and to the domestic violence, third offense charge, in exchange for dismissal of the first-degree home invasion charge. 1/17/2012 Plea Tr. at 3-4 (Dkt. 9-6). The following exchange took place between defense counsel and Petitioner:

> [COUNSEL]: I did come to the jail and I went over the plea agreement, is that correct, with you?
>
> [Petitioner]: Yes.
>
> [COUNSEL]: And I also went over the potential guidelines in this case, and there are some variables that are outstanding, it could be exactly what I figured, it could be a little bit more, it could be a little bit less, is that correct?
>
> [Petitioner]: Yes.
>
> [COUNSEL]: And understanding that you're wanting to accept this plea deal of the reduction from the home invasion first degree to the home invasion second degree, is that correct?
>
> [Petitioner]: Yes.
>
> [COUNSEL]: Understanding that you're going to plead no contest to the home invasion second degree along with the domestic violence third charge, is that correct?
>
> [Petitioner]: Yes.
>
> [COUNSEL]: And you're wanting to proceed with that plea today?
>
> [Petitioner]: Yes.

Id. at 4-5.

The trial judge asked Petitioner some initial questions. Petitioner indicated that he had an opportunity to talk to his counsel about the pending charges, about the penalties he faced, and about his rights. Petitioner indicated that he reviewed the notice of intent to seek sentence enhancement that charged him with being a fourth felony habitual offender with his attorney prior to the plea, and he understood the provisions on that form. The judge explained the charges in the Information and advised Petitioner that he faced up to 20 years in prison for the first-degree home invasion count, and up to two years for the domestic violence count. Petitioner replied that he understood. Id. at 5-8.

As the judge began to explain the prosecutor's notice of intent to seek sentence enhancement for fourth or subsequent offense, trial counsel interrupted the judge:

> [COUNSEL]: Excuse me, your Honor, we are not going to do the habitual because there is a dispute – it's possibly a third, we're going to take that at sentencing.
>
> THE COURT: You're going to wait. Agreed?
>
> [PROSECUTOR]: Yes, we can address that at sentencing.

Id. at 8.

The trial court then advised Petitioner of the rights that he was waiving by pleading no contest. Petitioner understood that he was waiving his rights by pleading no contest. Id. at 8-10. Petitioner confirmed that he had reviewed the plea agreement, that it was complete, and that no other promises were made to him other than the ones placed on the record. Petitioner denied that he had been threatened to plead no contest. Id. at 11-12. The trial judge explained the plea agreement, indicated that second-degree home invasion was a felony punishable by imprisonment for not more than 15 years. Petitioner indicated that he agreed to the terms of the plea agreement and had discussed them with his attorney. Id. at 12-14.

3

Petitioner's sentencing was held on February 7, 2012. The prosecutor informed the court that Petitioner's habitual fourth notice should have been a habitual third notice, and a copy of the amended notice charging Petitioner with being a third felony habitual offender was provided to trial counsel. Trial counsel agreed that Petitioner should have been charged with being a third felony offender, and not as a fourth felony habitual offender. 2/7/2012 Sentencing Tr. at 3-4 (Dkt. 9-8). Defense counsel then informed the judge that Petitioner wanted to withdraw his plea:

> Your Honor, I know the Court will recall at the time that I took this plea I made a factual record, and I voir dired my client with the Court's permission regarding this plea. This was a case where there was a plea bargain, there was a reduction from a home invasion first to a home invasion second, and I made a factual -- a record asking my client did he recognize that if he proceeded with the plea that his guidelines at the time of sentencing could be higher, lower, or the same of what I had calculated them. At the time I received the PSI [pre-sentence investigation report] I recognized that the guidelines were higher than what we originally looked at. I went over to the jail and I spoke with my client, and I went through line by line the PSI and the guidelines and the sentencing guideline book. What I discovered was, was that because of some extensive (indiscernible) results we did not have at the time of the plea, it upped his guidelines from the 29 to the 43. I went through all of the prior misdemeanors with my client, which he verified with me, and therefore his guidelines increased. At that time my client indicated to me this is not what he agreed to and that he wanted to withdraw his plea. I indicated to my client that I had made a record indicating that his guidelines could be higher, I cannot change his criminal history, and that I did not feel that the Court would, in fact, allow him to withdraw his plea, but that I would ask the Court if the Court would consider allowing him to withdraw his plea and allow him to go to trial on this matter. I have asked the Court at the bench, and now I'm formally placing it on the record that my client would like to withdraw his plea.

Id. at 4-5.

4

The trial judge denied Petitioner's motion to withdraw his plea, observing that trial counsel made a record at the plea hearing that the sentencing guidelines might change, that they could be higher or lower "but what would control is the guidelines as calculated at the time of sentencing." Id. at 6. The judge indicated that he was "satisfied that the plea in this case was freely, knowingly, and voluntarily given, the record will reflect that." Id.

Petitioner informed the judge that he had received the notice of intent to seek enhancement for a third offense from his lawyer and had reviewed the notice with counsel. Petitioner acknowledged that he had two prior convictions. The judge advised Petitioner that, as a result of his prior convictions, the sentences that he faced regarding the underlying charges would be enhanced. The judge advised Petitioner that, as a result of being charged with being a third felony habitual offender, he faced up to 30 years in prison on the home invasion charge, and that on the domestic violence charge, he faced up to four years in prison. Petitioner stated that he understood this and had discussed the matter with his lawyer. Id. at 8-9. Petitioner's sentencing guidelines were 43 to 129 months. The judge sentenced Petitioner within the guidelines to concurrent prison terms of six to 30 years' imprisonment for the home invasion conviction, and 30 months to four years for the domestic violence, third offense. Id. at 11.

Petitioner's conviction and sentence was affirmed on appeal. People v. Duncan, No. 311786 (Mich. Ct. App. Sept. 14, 2012) (Dkt. 9-12); leave denied, 823 N.W.2d 573 (Mich. 2012) (Dkt. 9-13).

Petitioner filed a post-conviction motion for relief from judgment (Dkt. 9-9), which was denied by the trial court. People v. Duncan, No. 11-238903-FH, Op. & Order (Oakland Cnty. Cir. Ct. Dec. 5, 2013) (Dkt. 9-11). Petitioner did not appeal the denial of the post-conviction motion.

Petitioner seeks a writ of habeas corpus (Dkt. 1). In his petition, Petitioner raises the following claims:

> Was petitioner denied his due process rights to withdraw his plea when he not informed of the maximum enhanced penalty?

Pet. at 6 (cm/ecf page). In the memorandum in support of his petition, Petitioner raises the following claim:

> Where defendant met the requirements of the court rule by establishing before sentencing that his plea was based on a material misunderstanding of the sentencing guidelines and withdraw of the no[lo] contendere plea was in the interest of justice, the trial court's refusal to set aside the plea was an abuse of discretion.

Pet. at 19 (cm/ecf page).

### III.  STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if

the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-406 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411.

The Supreme Court has explained that a "federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). Thus, the AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (quotation marks and citations omitted). A "state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011) (quotation marks). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citation omitted). Furthermore, pursuant to section 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. Id. Habeas relief is not appropriate unless each ground that supported the state-court's decision is examined and found to be unreasonable under the AEDPA. See Wetzel v. Lambert, 132 S. Ct. 1195, 1199 (2012).

"If this standard is difficult to meet, that is because it was meant to be." Harrington, 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from re-litigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. Id. Indeed, section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Id. (quotation marks omitted). Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." Woodford v. Viscotti, 537 U.S. 19, 24 (2002). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state-court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 131 S. Ct. at 786-787.

Lastly, a federal habeas court must presume the correctness of state court factual determinations. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. Warren v. Smith, 161 F.3d 358, 360-61 (6th Cir. 1998).

The Michigan Court of Appeals denied Petitioner's application for leave to appeal in a form order "for lack of merit in the grounds presented." The Michigan Supreme Court subsequently denied Petitioner leave to appeal in a standard form order without any extended discussion. Determining whether a state court's decision resulted from an unreasonable legal or factual conclusion, as would warrant federal habeas relief, does not require that there be an opinion from the state court that explains the state court's reasoning. Harrington, 562 U.S. at 98.

"Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." Id. In fact, when a habeas petitioner has presented a federal claim to a state court and that state court has denied relief, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Id. at 99. That presumption may be overcome only when there is a reason to think that some other explanation for the state court's decision is more likely. Id. at 99-100.

In the present case, the AEDPA deferential standard of review applies to Petitioner's case, where the Michigan Court of Appeals rejected Petitioner's appeal "for lack of merit in the grounds presented," and the Michigan Supreme Court subsequently denied leave to appeal in a standard form order, because these orders amounted to a decision on the merits. See Werth v. Bell, 692 F. 3d 486, 492-494 (6th Cir. 2012).

## IV. ANALYSIS

### A. Merits

Petitioner claims that he should have been permitted to withdraw his no-contest plea because he was not informed of the maximum penalty for the sentencing enhancement as a third habitual offender. Petitioner further claims that he was entitled to withdraw his plea because he believed that the sentencing guidelines on the home invasion charge would be 29 to 43 months, and because the plea agreement references only a 15-year maximum sentence.

At the outset, Petitioner has no federal constitutional right or absolute right under state law to withdraw his no contest plea. See Adams v. Burt, 471 F. Supp. 2d 835, 843 (E.D. Mich. 2007). Therefore, unless the plea violated a clearly-established constitutional right, whether to

9

allow the withdrawal of a criminal defendant's guilty or no contest plea is discretionary with the state trial court. See Hoffman v. Jones, 159 F. Supp. 2d 648, 655 (E.D. Mich. 2001).

The only question on collateral review of a guilty plea is whether the plea was counseled and voluntary. United States v. Broce, 488 U.S. 563, 569 (1989). Therefore, the specific question for this Court is whether Petitioner's no-contest plea was voluntary and intelligent. Hoffman, 159 F. Supp. 2d at 655. "A plea of guilty [or no contest] is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'" Bousley v. United States, 523 U.S. 614, 618 (1998) (quoting Brady v. United States, 397 U.S. 742, 748 (1970)). A guilty or no-contest plea is voluntary if the accused understands the nature of the charges against him and the constitutional protections that he is waiving. Henderson v. Morgan, 426 U.S. 637, 645 n.13 (1976). A plea is knowing and intelligent if it is done "with sufficient awareness of the relevant circumstances and likely consequences." Brady v. United States, 397 U.S. 742, 748 (1970). The defendant must also be aware of the maximum sentence that can be imposed for the crime for which he or she is pleading guilty or no contest. King v. Dutton, 17 F.3d 151, 154 (6th Cir. 1994).

When a petitioner brings a federal habeas petition challenging his plea of guilty or no contest, the state generally satisfies its burden by producing a transcript of the state-court proceedings showing that the plea was made voluntarily. Garcia v. Johnson, 991 F.2d 324, 326 (6th Cir. 1993). The factual findings of a state court that the guilty plea was properly made are generally accorded a presumption of correctness. Petitioner must overcome a heavy burden if the federal court is to overturn these findings by the state court. Id. Additionally, a habeas petitioner bears a heavy burden of rebutting the presumption that his or her guilty or no-contest

10

plea, as evidenced by the plea colloquy, is valid. Myers v. Straub, 159 F. Supp. 2d 621, 626 (E.D. Mich. 2001).

It is only when the consensual character of a guilty or no-contest plea is called into question that the validity of a guilty plea may be impaired. Mabry v. Johnson, 467 U.S. 504, 508-509 (1984). A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his or her own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulillable promises), or, perhaps, by promises that are by their nature improper as having no proper relationship to the prosecutor's business (i.e., bribes). Id.

Petitioner initially contends that his plea should have been set aside because the judge failed to advise him at the time of his initial plea to the underlying charges that he could face a maximum sentence of 30 years for the home invasion charge as a third felony habitual offender.

A trial judge's failure to advise a criminal defendant about the maximum possible penalty that he or she could receive from pleading guilty or no contest, standing alone, does not require that the plea be set aside. See Riggins v. McMackin, 935 F.2d 790, 795 (6th Cir. 1991). "A defendant may learn of information not relayed to him by the trial court from other sources, such as his attorney." Id.

The prosecutor initially filed a notice of intent to seek a sentence enhancement charging Petitioner with being a fourth felony habitual offender. The notice indicated that Petitioner faced up to life in prison on the original first-degree home invasion charge. See 11/3/2011 Notice (Dkt. 9-4). At the time of the plea, Petitioner indicated that he reviewed the notice of intent to seek sentence enhancement, charging Petitioner with being a fourth felony habitual offender,

with his attorney prior to pleading no contest and understood the provisions on that form. 1/17/2012 Plea Tr. at 7. The judge was about to explain the penalties for being a fourth felony habitual offender when Petitioner's counsel interrupted the judge and indicated that the parties would take up the habitual offender charge at sentencing because there was a dispute over whether Petitioner was only a third habitual offender. Id. at 8. However, at the time of his plea, Petitioner had been made aware by the original notice of intent to seek sentencing enhancement, which he reviewed with his counsel, that he faced a possible life sentence.

At sentencing, the parties agreed to amend the supplemental notice to reflect that Petitioner was only a third habitual offender. Petitioner acknowledged receiving a copy of the notice of intent to seek enhancement for a third offense from his lawyer and had reviewed the notice with counsel. The trial judge at that point advised Petitioner that he faced up to 30 years in prison on the second-degree home invasion charge for being a third felony habitual offender.

Petitioner was aware, at the time that he pleaded no contest to the underlying charges, that he faced a possible life sentence if he received a sentence enhancement as a fourth habitual offender. Thus, the court's failure to advise him at the time of his plea that he faced up to 30 years in prison if convicted only of being a third habitual offender would not render his plea involuntary. Because Petitioner was originally informed by counsel that he faced a possible life sentence if convicted as a fourth felony habitual offender, Petitioner is not entitled to withdraw his plea because he does not allege that he would not have pleaded no contest had he known that the maximum penalty was only 30 years if convicted as a third habitual offender. See, e.g., United States v. Kennedy, 493 F. App'x 615, 616 (6th Cir. 2012) (defendant was not entitled to withdraw plea based on court's misstatement that maximum sentence was 15 years for offense

that carried a maximum five-year penalty, where the defendant failed to show that he would not have pleaded guilty if he had been advised of the correct maximum sentence).

Petitioner next contends that his plea was involuntary because he believed that his sentencing guidelines were only 29 to 43 months if he pleaded no contest.

An unfulfilled state promise obtained in return for a guilty plea will entitle a habeas petitioner to habeas relief. Myers, 159 F. Supp. 2d at 627. However, a federal court sitting in habeas review should not "lightly find misrepresentation in a plea agreement." Id.

In the present case, the parties indicated on the record that the plea agreement consisted of Petitioner pleading no contest to a reduced charge of second-degree home invasion and domestic violence, third offense, in exchange for dismissal of the first-degree home invasion charge. Petitioner acknowledged on the record that there were no other promises to get him to enter his plea. Although Petitioner's counsel indicated that he had gone over the sentencing guidelines with Petitioner, counsel also indicated that the guidelines could be lower or higher, depending on additional variables. Petitioner acknowledged that he understood this. Nothing in the record indicates that Petitioner was promised a specific guidelines sentence.

Absent extraordinary circumstances, or some other explanation as to why a defendant did not reveal other terms when specifically asked to do so by the trial court, a plea agreement consists of the terms revealed in open court, where the trial court scrupulously follows the required procedure for taking the defendant's plea. Baker v. United States, 781 F.2d 85, 90 (6th Cir. 1986). Because a plea bargain is contractual in nature, it would violate established contract-law standards to permit a defendant to attempt to prove that a plea agreement is other than it unambiguously appears on a thorough record. Id. Plea agreements are to be strictly construed. See United States v. Brummett, 786 F.2d 720, 723 (6th Cir. 1986). A term of a plea agreement

"that is unambiguous on its face and agreed to by the defendant in open court will be enforced." McAdoo v. Elo, 365 F.3d 487, 497 (6th Cir. 2004). Moreover, the "Constitution does not require judges to explain the meaning of . . . unambiguous terms during the plea colloquy in order to combat alleged misinformation that is not revealed on the record." Id.

A "clear reading" of the plea agreement shows that there was no promise by the prosecutor or the trial judge that Petitioner would receive a sentence within the sentencing guidelines range of 29 to 43 months. Petitioner has, therefore, failed to show that the original terms of the plea agreement were breached by the prosecutor or the trial judge. Myers, 159 F. Supp. 2d at 628. Moreover, Petitioner would not be entitled to relief on his claim, where Petitioner expressly denied the existence of any off-the-record promises at the time of his plea when queried by the trial judge. See Phipps v. Romanowski, 566 F. Supp. 2d 638, 647 (E.D. Mich. 2008). In light of the fact that Petitioner was advised by the trial judge, the prosecutor, and defense counsel that the only plea agreement was that the first-degree home invasion charge would be dismissed in exchange for a plea to a reduced charge of second-degree home invasion and the domestic violence charge, Petitioner has failed to show that he reasonably believed that he would receive a sentence within the sentencing guidelines range of 29 to 43 months by pleading no contest. McAdoo, 365 F.3d at 497. Because the parties clearly indicated the terms of the plea agreement, and Petitioner expressly denied the existence of any other promises at the time of the plea, Petitioner is unable to show that he had any reasonable belief that he would be sentenced within the sentencing guidelines range of 29 to 43 months. See Wright v. Lafler, 247 F. App'x 701, 705-707 (6th Cir. 2007).

To the extent that Petitioner claims that his trial counsel misled him regarding the terms of the plea agreement, a state court's proper plea colloquy will cure any misunderstandings that a

Petitioner may have had about the consequences of the plea. Ramos v. Rogers, 170 F.3d 560, 565 (6th Cir. 1999). Thus, a claim of ineffective assistance of counsel predicated on allegedly misleading information given by counsel about the terms of a plea agreement can never constitute an "extraordinary circumstance" under Baker, when the court conducts a proper, clear, and through plea colloquy. Id.

Finally, although Petitioner claims that he understood the plea agreement to guarantee him a sentence within the guidelines range of 29 to 43 months, habeas relief should not be granted by crediting a Petitioner's subjective version of his understanding of the plea bargain. See Nichols v. Perini, 818 F.2d 554, 558-559 (6th Cir. 1987); see also Doughty v. Grayson, 397 F. Supp. 2d 867, 881-882 (E.D. Mich. 2005). Petitioner would, therefore, not be entitled to the withdrawal of his plea based on any claim that his attorney gave him erroneous information concerning the terms of the plea agreement, where Petitioner was given the correct information concerning the terms of the plea agreement by the sentencing judge at the time of the plea, and Petitioner expressly denied the existence of other representations or promises. See United States v. Todaro, 982 F.2d 1025, 1029-1030 (6th Cir. 1993). Accordingly, the Court concludes that Petitioner is not entitled to habeas relief on his claims.

### B. Certificate of Appealability

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. See

15

Slack v. McDaniel, 529 U.S. 473, 484 (2000).  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327.  In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. Id. at 336-337.  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; Castro v. United States, 310 F.3d 900, 901 (6th Cir. 2002).

Having considered the matter, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right.  Accordingly, a certificate of appealability is not warranted in this case.

### C.  Leave to Proceed on Appeal In Forma Pauperis

Although the Court denies a certificate of appealability to Petitioner, the standard for granting an application for leave to proceed in forma pauperis ("IFP") is a lower standard than the standard for certificates of appealability. Foster v. Ludwick, 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002) (citing United States v. Youngblood, 116 F. 3d 1113, 1115 (5th Cir. 1997)). Whereas a certificate of appealability may only be granted if a petitioner makes a substantial showing of the denial of a constitutional right, a court may grant IFP status if it finds that an appeal is being taken in good faith. Id. at 764-765; 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. Foster, 208 F. Supp. 2d at 765.  The Court concludes that an appeal in this case could be taken in good faith.  Therefore, the Court grants Petitioner permission to proceed IFP on appeal.

## V. CONCLUSION

For the reasons stated above, the Court denies the petition for writ of habeas corpus (Dkt. 1). The Court declines to issue Petitioner a certificate of appealability, but the Court grants Petitioner permission to proceed on appeal in forma pauperis.

SO ORDERED.

Dated: October 26, 2015　　　　　　　　　　s/Mark A. Goldsmith
　　　　Detroit, Michigan　　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　　　United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 26, 2015.

　　　　　　　　　　　　　　　　　　　　　　s/Karri Sandusky
　　　　　　　　　　　　　　　　　　　　　　Case Manager